And the court now calls our final case of the morning, 118139, the Henderson Square Condominium Association, et al. v. LAB Townhomes, LLC. Are you ready to proceed? I am, Your Honor. Appellee, ready? You may proceed. May it please the Court, my name is Schwartz Sato, and I'm the attorney for the Defendant's Appellant's Lab Townhomes, LLC, LAB Law Office, LLC, Lincoln National Endowment, LLC, Enterprise Development Company, Inc., Ron Shipka, Jr., Ron Shipka Sr., and John Shipka. Your Honors, this is a case about a stale construction defect claim that has been gussied up and repackaged by the plaintiff and then by the appellate court to survive the 10-year construction statute proposed. This case is more than that. The plaintiff filed their complaint nearly 15 years after all construction was completed at this project. At most, even with the four-year grace period, the maximum amount of time to bring a construction-related claim is 14 years after the act or omission that caused the injury. Again, this claim was brought in year 15. There is no question that but for the applicability of an exception to the construction-related statute as proposed, the plaintiff's remaining claims, in fact, all of its claims, are time-bound, and that's a matter of simple arithmetic. The exception that the appellate court relied upon is set forth in Section 13215 of the Code of Civil Procedure, fraudulent concealment of a cause of action. This court has held, in Hagney v. Loebman and other, Borlaug v. Loyola and other cases, that fraudulent concealment of a cause of action must be specifically pled by a plaintiff in order to survive a statute opposed, that pleading requires an allegation of an affirmative act that was intended to and that, in fact, did prevent a plaintiff from discovering their injuries or filing a claim. Mere silence in a plaintiff's failure to act or investigate is not enough. Fraud must prevent the discovery of a cause of action, and that fraud must be pled with particularity. In this case, there was no affirmative act pled. Plaintiffs, or the defendants, rather, the developers, did nothing and said nothing over the course of this 15-year period that prevented or lulled the plaintiffs from investigating their claims or filing a timely cause of action, filing a timely complaint. Instead, exceptions have been layered upon exceptions, and almost a daisy chain of cases latched together with vague allegations have produced a result that suggests that, well, where there is a fiduciary relationship, there need not be an affirmative act pled. There need not be the strictures of a fraudulent concealment claim met. In essence, while there is that exception to the fraudulent concealment exception to the statute proposed, that exception still has to meet the standards. In essence, the special relationship merely replaces the affirmative act in the iteration of the elements. Mr. Sato, the trial court found that counts four and five were not construction-related, right? In my understanding of the facts, and the appellate court found that they were. The appellate court did find that they were construction-related, and the trial court also found that they were construction-related. That was part of the trial court's original May 10, 2012, opinion, which dismissed all the claims for the same reason, because of the construction-related statute limitations. Okay. I thought that the trial court and maybe counsel can answer this as well. I thought that counts four and five were not construction-related, as to the trial court and the appellate court found that they were. And my question was going to be is whether counts four and five were construction-related causes of action so that 214 applies, or whether instead they are not so, therefore the general limitation of 13-205 applies. Justice Thomas, the issue of whether 13214 applies is not under or before this court. I understand this is de novo review, but that hasn't been challenged by the plaintiff, and that was the holding of the appellate court, that these claims were subject to the construction-related statute limitations imposed. There's a full set of briefings. This was primarily the argument before the appellate court, but that's why we haven't addressed that in our brief. The cases cited state that the nature of the injuries added here in counts four and five. Yeah, that's why I asked, because there's a case, the nature of the liability that dictates which limitation period applies. Correct. And then the nature of the relief sought. And, you know, it comes to – I think it's important. I mean, maybe we get to the same place anyway, but it's important to know whether or not the circuit court or the appellate court certainly found that they were construction-related. Correct. And you're saying the circuit court found the same. Correct. Okay. When I say that this case is more than just about a construction defect case, though, the fraudulent concealment of cause of action exception is an exception of general applicability. So this is an exception that applies to statutes of propose that exist for doctors, lawyers, accountants, insurance producers, product manufacturers, a host of other parties. And the issue before this court is, what is the pleading threshold for a fraudulent concealment of cause of action exception to that statute propose? Our position is, which follows this court's opinions, that this should be a strictly construed exception, that there need to be facts that are clear, that not only show some deceptive conduct, as the appellate court found sufficient, but that show affirmative acts or a relationship that, in fact, operated to prevent the claim from being discovered or cause of action being filed. And in this case, that has not been pled or alleged, and it doesn't make sense. In the complaint, the plaintiff alleged that the concealment was the fact that the defects were hidden behind brick and mortar. But that is another way of saying, a tautology, that latent defects are latent. Of course, certain wall, drywall, interior drywall or exterior wall will hide certain defects, but that's not the intent of what the drywall is there for. It's to finish the interior unit. The appellate court focused on two statements that found constituted forms of deceptive conduct. The first statement was contained in a pre-construction brochure created as of November 1, 1994. In this pre-construction brochure, Enterprise Development Company made certain representations about anticipated specifications regarding the R-value of insulation to be installed in the third-floor ceilings and the exterior walls. This representation was subject to the disclaimer, quote, the above specifications are subject to revisions deemed advisable by developer or architect or required by law. It is entirely unclear, given this disclaimer, how this statement about anticipated specifications could in any way be false. Mr. Soto, it seems that you're arguing that the plaintiffs knew about their cause of action when they had water leaks. That's correct. But you're also arguing that defective insulation has nothing to do with the water leaks. Is there any inconsistency there? No. The fact that water is infiltrating inside the building lump envelope inside the residential unit has been held by a number of appellate court decisions, Schleyhan v. Cole being one of them, Maxey v. Inc. and the Skidmore decision, where that circumstance is sufficient to trigger inquiry notice. There's something wrong when water is infiltrating inside your building envelope at the outside. My argument as to insulation is simply that it does not necessarily follow that if there is inadequately installed insulation, that therefore you're going to have water infiltration. Insulation is designed to insulate, to regulate temperature. If you have poorly installed insulation, you're going to get cold spots. You're going to get bad, high electric bills. Insulation is not designed to be a sponge for water. In fact, that's what a vapor barrier is there to keep insulation dry. But it could be insulation could be designed to prevent freezing of the pipes that cause water leaking. It's possible. Again, there's no evidence of any, or there's no allegation of any burst pipe, but that's true. Depending on where the insulation is, we're talking about insulation inside walls, not necessarily pipe insulation. And in particular, we're talking about, their allegation is about insulation in third floor ceiling and exterior walls, whereas the leaking that was reported were in the two garden units or basement units of these townhomes. So again, the causation between insulation and the experience of water infiltration or alleged water infiltration is not clear at all. So that's why those two things are not inconsistent. Justice Thomas, I hope that answered your question. Yeah, thank you. So going back to the first statement, this pre-construction brochure statement about insulation, the disclaimer, which the appellate court discounted without a very potent explanation, in my opinion, was simply that it turned the anticipated specification into an empty promise. I will do something in the future, maybe or maybe not. I reserve the right to change my mind. You can't hang your hat on that in terms of relying on that. That's not an affirmative statement that could be false, because if you don't do the thing, you already said, I might not do it. The second statement that the appellate court relied upon in finding fraudulent concealment cause of action was the SHPCAS setting the first year reserve budget as interim directors of the board of managers. Now, this had to have happened sometime between June 12, 1996 and late 1996, because there was no condo association until June 12, 1996, and the SHPCAS turned over control of the association to unit owners in late 1996. The association does not allege at what level the SHPCAS set that first year budget, nor do they attach a copy of that first year budget to their complaint. They merely allege that the unspecified level that was set was unreasonable, given the scope and cost of repairs some 15 years later. The association implies that if the SHPCAS would have set a higher reserve budget, the higher resulting assessments might have alerted unit owners that something was wrong, but that doesn't really make sense, given that the first unit owner board, which they allege did not know about the defects, would have seen the high assessments and the really high reserve budget and probably reduced it, take it easy on their own unit owners, and it would have never been communicated. The budget signal that they're alleging is the causation doesn't seem to make sense to me. It's almost like using your thermostat in your house to warn your family about a burglar. If you set it to 90, somebody's going to say, well, we're going to put it down to 72. It's not a signal that makes any sense. But the biggest problem with both of these statements is that neither could in fact operate to conceal or prevent the plaintiff from discovering his or her injuries. If water is dripping on your head when you're laying in bed, the piece of paper that's a historical brochure or a reserve budget is only good as an umbrella. You're not going to look at that piece of paper or those promises and say, well, this water can't be dripping on my head because Enterprise said they were good at building condos or Enterprise said something about insulation or look at the reserve budget. There's $70,000 in there. There can't be water dripping on my head. And that's what this court has held in Morris v. Margulis and other cases, that the concealment is over the minute it's discovered. And at that point, the question then becomes, when? When did they discover that? And that's what the plaintiff has evasively pled around. They allege that, well, sometime between 1996 and 2007 or 2008, the unit orders began discovering water infiltration. Well, that is materially evasive, and it's deliberately so, because if they were to tell the truth about when they discovered the water infiltration, they would be accused of lack of diligence and not only would there be a statute of limitations, but there would probably be a lack of development. But I want to get to one of the important or interesting wrinkles to this, because I think that the question of fiduciary relationships makes this case somewhat more interesting than your run-of-the-mill. And in Hagney v. Chicago Park v. Kenroy, this court has recognized that where there is a fiduciary relationship, there could arise an affirmative duty, and a failure to disclose what the fiduciary then knows could qualify as a form of fraudulent concealment. However, there are two critical qualifications to this exception to the exception. The first is, as I discussed in my reply brief, the notion of scienter. In Orlock v. Loyola Hospital, this court basically held that even though doctors are fiduciaries to their patients, doctors cannot be held to the impossible standard of omniscience. The real question is, what did the fiduciary know and when did they know it? The Shickas were not alleged to have been known about the missing insulation or even any of the other defects that were alleged. The only allegation in count five is that the Shickas knew or should have known, which is a different standard. The Shickas also did not know about water infiltration. During their tenure, that's during that six-month period on the Board of Directors, they did not know about water infiltration because, again, the plaintiffs alleged that that did not occur until sometime after turnover control of the association occurred in 1996. So, what they did or what they might have known is that there might have been some corners cut. I'm not saying that there were, but they might have known that. They might have known that instead of using Door System A, we used Door System B, or instead of using Contractor A, we used Cousin Sal. But that doesn't necessarily mean that you knew that the resulting construction would be defective or that you knew that the result of that would be that water would infiltrate into the garden unit. Again, the question of what they knew and when they knew it is important because they couldn't be expected to disclose affirmatively every step in the construction process to the unit owner. Do you agree that fiduciaries can't ignore future problems, though, on the sole basis that they're going to come up when they don't have the relationship anymore? If they anticipate those problems, certainly, they can't ignore something that's evident. But the question here is what the workmanship does know would be the future problem, simply because even if there was a foot of missing insulation in the exterior wall, that doesn't necessarily mean that you need to set aside money in the reserve budget to open the wall and put in the insulation. But you referred in your comment or in your remarks that if they knew that they were shoddy workmanship. I mean, that's not, you can't say, well, you know, they won't find out about that until I'm long gone from here. So, you know, what do I care? I mean, that's not the standard, is it? Well, I mean, it's, you know, using the term shoddy, you know, is, again, I think what makes it material is that you have to understand that there's an appreciable risk as a result of that. Just simply because you use a particular kind of cheaper material as opposed to the more expensive material, it doesn't necessarily mean that it's, I guess you could say that's cutting a corner and saving a cost, but it doesn't mean there's going to be a material impact to the unit owner. Aren't those questions of fact, like whether the two statements made by the defendant that are alleged to have lulled plaintiffs into this inaction and ignorance, are those questions of fact that should be resolved? No, Your Honor, in Hagney, this Court held that the plaintiff is required to plead facts attributing the failure to discover the cause of action to the trust in the producer. In Hagney, this Court described that as the essential element of the case in this type of situation that must be alleged in the plaintiff's pleadings. And so that's the second critical qualification, is that in Hagney, this Court said, if you're going to invoke the fiduciary exception as the basis for fraudulent concealment, you not only have to establish that there is a fiduciary relationship, but what about that relationship caused the plaintiffs to sit back and do nothing? Because if the plaintiffs realized that they were injured after the association had been turned over to the unit owners, they were not entitled to sit back and do nothing for the remainder of the period until they felt ready to bring an action. They were required to investigate at that point, and they were the only ones who could do that. That was not alleged in the complaint. In fact, this whole fiduciary relationship as a basis for fraudulent concealment was not alleged at all either. I only have a few minutes. I do want to address one issue, which is the Chicago condominium ordinance. And this is almost on behalf of the amicus at World Properties. They did request that regardless of how this Court rules on the statute of proposed and fraudulent concealment exception issue, that there be a separate ruling with respect to the appellate court's interpretation of Section 1372030. And the reason is that if the appellate court's decision were reversed, for example, and the complaint is stricken as untimely, there is still the appellate court opinion that potentially persuades the authority as to an interpretation of this particular ordinance. And as we've argued in our brief, as well as in the amicus argue, the appellate court's interpretation of statements is overly literal and unnecessary to fulfill the purpose of the statute because a contextual interpretation, which simply interprets the term statements as referring to the, I believe, 17 enumerated statements that developers are required to make in their property report, that's the contextual interpretation that gives meaning to not only the false statements provision of Section 1372030, but also the omission of material statements, Part B of Section 1372030. But I don't believe that the literal interpretation would result in an absurd and unjust result.  Thank you. Good morning, Your Honors. Good morning. Jean Perry is on behalf of the appellate court. Councilor? Your Honors, I believe- I had to pick up on something that we were just discussing was the condo ordinance. The condo ordinance states that no person shall, with the intent that a prospective purchaser rely on such act or omission, advertise, sell, or offer for sale any kind of unit by employment of any statement or pictorial representation, which is false, or omitting any material statement or pictorial representation. Is this a construction-related claim, or is this fraud, misrepresentation? Well, Your Honor, frankly, I think it's a little bit of both. I mean, what we- well, I don't- actually, I don't think it's fraud, but it's really more- it goes toward marketing of what the units are here. I mean, the fact that you have to make a statement or a pictorial representation means that a developer- and this is what the statute says, basically- a developer cannot make a representation to a prospective purchaser that the building or the unit that he or she is about to purchase or is considering purchasing has some quality to it that it doesn't have. So the statement, according to this, is the statement made is false. Correct. So that's not fraud? That's construction-related? And obviously, I'm bringing the issue about which statute of limitation applies here. Is this the construction statute of limitation, or is this the fraud limitation, looking at the Gillespie case, et cetera? What does this count? Well, Your Honor, it's a breach of- a violation of the statute, obviously. We have always argued in our briefs that both of our claims for breach of fiduciary duty and under the ordinance should be governed by the five-year statute in Section 205. We did not argue, and the trial court didn't agree with us and the appellate court didn't agree with us, that Section 214 should really apply because we didn't consider these to be construction-related activities that were undertaken by the developer. But to answer your question a little further, I don't necessarily think that this is a claim for fraud for the reasons that the appellate court stated. You know, the ordinance is written as it's written, and Justice Palmer pointed out in his concurring opinion that had the counsel wanted to make this a fraud claim, it could have. It's just a statement. It doesn't say statement of fact. It says that the developer has to have the intent to induce the prospective purchaser to rely on the statements, but you don't actually have to have reliance on the statements, which is very different from fraud. So I think given, you know, this was enacted 30 years ago, given the environment of condominium purchases becoming more popular and because there apparently was an issue with developers giving misinformation about the units that prospective purchasers were purchasing, the counsel went ahead and enacted this ordinance. Now, the ordinance has been in effect for 30 years, and this provision hasn't changed. The ordinance as a whole has been amended twice, but this provision has remained the same the entire time. So to the extent the city counsel wanted to make this into a fraud claim, it certainly could have. And I also disagree with the trial court and agree with the appellate court that this is not necessarily promissory fraud either. You have here an intent to induce a purchaser to act, and that doesn't necessarily mean that it's something in the future. They're making a statement so that the purchaser can act given what they know. So for those reasons, I don't believe that a violation of the ordinance is really akin to a fraud claim. But I did argue that it should be subject to Section 205 because violations of ordinances are typically subject to the five-year statute of limitations in Section 205. So I initially did make that argument, but the trial court and the appellate court found that these were construction-related activities. And similarly, the breach of fiduciary duty, that's construction-related and not focused specifically on the breach of the fiduciary duty? Again, I argued that the breach of fiduciary duty was subject to the five-year statute, but the trial court and the appellate court found that it was related to a construction-related activity because what you have here is a developer who controlled the association for the first year and a half, and it was in existence. The declaration was recorded in 1995, and they turned it over in late 1996. So for that entire time, the developer was the one who had controlled the funds of the association. But based on what I thought, I thought that that should not be a construction-related activity because it really goes to the ownership of the property and should be subject to the five-year statute in Section 205. But regardless, even based on the appellate court's decision that Section 214, subsection E, the fraudulent concealment section, applied, we still get to the five-year statute of limitations regardless. So I think under the five-year statute of limitations, we've pled more than sufficient facts to show that we were within that five-year statute. Contrary to what counsel says, we allege in our pleading that we identified certain leaks at the building in 2007 and early 2008, which we attributed to these rooftop decks that were constructed on top of the roofs. We made minor repairs to try to fix the water infiltration. When that didn't work, we called in Wharton, the consultant, and I'm sure your honors have read the report that they attached. This isn't just missing insulation or, you know, a few cut corners, as counsel suggests. There are major, major issues with the building to the point where Wharton suggests that the only way to really remedy the problems is to reconstruct the building itself. Ms. Ferris, you heard my question regarding the whole insulation leak situation with opposing counsel. There isn't any allegation in the complaint of when the defendants knew of the water problem in the ground floor units, right? Well, I believe that we allege that it occurred in late 2007, early 2008. But with respect to the insulation, that was only one problem with the building. Also, under the packet that the prospectus- What's the link? Can you explain the link between the alleged defects in the insulation and the source of the water? Well, initially, counsel is relying on the Wharton report, which only examined two of the garden units initially, and the Wharton report didn't identify issues with missing insulation. However, we did plead in our complaint that after we brought Wharton in and Wharton told us about all these problems, we did hire a contractor who came out and opened up the walls at several units and found there was little or no insulation in units other than those that had initially been experiencing water infiltration. And in addition, there was no vapor barrier. So that was one of the representations that was made in the packet to the prospective purchasers by the developer, was that there would be a vapor barrier installed in the units, and there certainly was not a vapor barrier in the units that our contractor had opened up. Going back to the appellate court's decision to apply Section 214E to this case, defendants argue that the plaintiffs did not allege any affirmative acts which would have concealed the causes of action here. I think he sort of misinterprets what the appellate court was saying. The appellate court in its ruling found that the misrepresentations that were made in the packet, coupled with the fact that the developer did not adequately fund the reserves, was sufficient to allege deceptive conduct. So that the fact that they had not funded in a manner in which they should have, and which actually gave an appearance to someone coming in to purchase, knowing the representations that were made and knowing what the prospective budget was, that gave the appearance that the building was actually in way better condition than it was. So to the appellate court, that was sufficient to allege some sort of deceptive conduct that would bring this cause of action within subsection E, which means that there was fraudulent concealment of these claims. In addition, the counsel represents that you typically have to allege these affirmative acts that can't be part of your cause of action. But we did allege a whole stream of deceptive conduct on behalf of defendants, which is sufficient to allege a pattern of deceptive conduct. And we cite cases that deal with constructive fraud. Because of the relationship you have with the developer as your fiduciary, that necessarily means that any deceptive conduct we allege would be sufficient for the fraudulent concealment. Counsel also said that he believes that it was not reasonable for the association to have relied on the representations in the packet and the way in which the reserves were funded, and that's not sufficient under the exception for fiduciaries where silence is sufficient to allege a cause of action for fraudulent concealment. Here, the whole point of having that exception for a fiduciary duty is so that the person who is relying on the statement doesn't need to call in to check the person he considers his fiduciary. For example, in this case, the developer is representing that he's been in the business for 30 years, going to give a quality building, has all these features to it, funds a reserve, presumably that he's done many times before. There is no reason for the association in this case to go ahead and investigate any of that before it discovered its water leaks numerous years later. So I think it was a little disingenuous for counsel to make that argument, because according to the report, as I'm sure you saw, there were many problems with the building. And the fact that a defendant represented that they were this great developer in the Chicagoland area, I think alleviates the need to make any sort of investigation of your fiduciary right off the bat. And we did cite there was Noosky and Kenroy cases. The Kenroy case involved a Chicago alderman who had taken a bribe to give a zoning requirement to a property owner. The city later came in on an eminent domain case and found out about the fraud, and the counsel and the person who owned the property alleged that it was beyond the statute of limitations, but the court specifically said that they had no reason to believe that the alderman was doing anything wrong until it discovered the fact that the property had been improperly rezoned. In addition, if the five-year statute of limitation applies, I think that we have sufficiently plaid facts here that bring us within that five-year statute. We have the allegations that we discovered the leaks in 2007-2008. We didn't know the extent of the leaks until we hired Wharton in 2009, and we didn't really know about the insulation and other missing elements of the property until 2011 when the contractor came in and did invasive openings into the building and found out that all of these things were in fact missing. And we did file our complaint in 2011. So I think that we're well within the five-year statute of limitations, and we've adequately plaid that. With respect to the code violation that we alleged in our other claim, I already addressed the issue that we don't believe that this is akin to a fraud claim, but I would like to address some of the amicus's arguments that the statute itself is far too broad to have a cause of action. I obviously disagree with the amicus. I think that although the amicus seems to imply that this would cover all people who are purchasing property from anyone, if you actually review the ordinance, it is limited to developers and condominium projects. And when you look at the intent of the ordinance, it further confirms that this is really limited to developers who are selling to prospective purchasers of condominium developments. So to the extent that I would be selling a piece of property to one of your honors, I don't think that this section would apply because I'm obviously not a developer, and the ordinance wasn't meant to protect people like you from me. But, Ms. Percy, the question with regard to what the appellate court decision actually says, there is some concern that the appellate court held that any false statement rather than a false statement of material fact is actionable under the Chicago Municipal Code. This seems kind of exceptionally broad and would appear to render any statement potentially actionable. Do you agree with that? I don't necessarily agree with that, Your Honor. I think that it has to be decided on a case-by-case basis. I know that the amicus was worried that puffery statements would be something that would be included in this, but puffery is sort of akin to porn. You know it when you see it, but you have to actually consider the context in which it is made and consider that statement on its own. In this case, we don't have such statements, and I think we have to stick to the facts of this case because, again, the developer here is representing that there's insulation, representing that there's a vapor barrier, representing that this is going to be a quality building, and it was anything but those three things. So in this specific case, I think the statements that were made, which were clearly false, would fall within the purview of the ordinance. And I'm not saying that there might be some other case that could come along where, you know, someone made a statement that, you know, could be considered puffery that would not be appropriate for the statute. But, again, I think that the defendant would always be protected because the statement has to, in fact, be false. So it's not just that any statement can be made. But a material statement. Pardon me? A material statement or just any false statement. Well, the way the statute is written is any false statement. But, again, you know, the amicus is asking the court to sort of act as a legislator and revise the statute where it's, you know, the statute's been in effect for 30 years and hasn't been changed at all. You know, except for a couple other provisions, the section 30 that we are talking about here, about the representations, has not been changed. So, you know, to the extent that the city council felt like they needed to clarify or quantify that to include material statements or some other type of statement, it has had the opportunity to do that for the last 30 years and has not done so. Defendant also argues that the defendant and the amicus argue that the ordinance would effectively eliminate contractual defenses such as an integration clause, parole evidence, and statute of frauds. We don't believe that that's true because those three things relate only to the meaning of the contract or whether a contract is in existence, whereas the statements that are made under the ordinance here are really meant to induce someone to enter into a contract. So those contract principles wouldn't necessarily be affected by any of the statements made with respect to the ordinance. The defendants also asked the appellate court to construe the packet and the allegations that were made in the complaint to find that the disclaimer in the packet was necessarily dispositive of whether or not insulation would be installed or not. Frankly, I think that argument is a little ridiculous because in some instances here, there was no insulation at all installed. So to the extent that a person is looking at these representations in the packet, I'm sure they were expecting some type of insulation to be installed. Whether or not it was the type that was specified in the packet or not certainly doesn't alleviate the developer to not include any at all. Same with the vapor barrier. For those reasons, Your Honors, I ask that the court affirm the appellate court's decision and return the case to the trial court. Thank you. Thank you again, Your Honors. Affirming the appellate court opinion would be a big policy change at a number of different levels and would increase costs for consumers. Not just consumers of affordable housing, although they would be affected as well, but also for consumers of other services, such as legal services, medical services, that are currently protected by a statute of repose. The appellate court standard, which the Association is advancing, is that there needs only be pled some deceptive conduct or maybe a pattern of deceptive conduct. But it does not meet or come close to meeting this court's strict standard for fraudulent concealment of cause of action, which requires that whatever the affirmative act is or the relationship is, in fact operate to prevent or lull a party from discovering their injury or bringing their claim. That's why it's fraudulent concealment of a cause of action. In this case, the deceptive conduct they're talking about, she never explains what stopped the Association from hiring a contractor to open up those walls. What stopped them from doing that for 13 years? And their own Wharton investigators said that for several years prior to 2009, unit owners had been complaining about water infiltration. What the Association chose to do was hire their own people, do minor repairs to the roof decking, but they never hired Wharton until 2009. They didn't hire this contractor to open up the walls until 2009. Again, what stopped them from doing that? It was not anything that the defendants said or did, and it couldn't have been the relationship that defendants had with the unit owners at the end of 1996. That could not have been a sufficient basis for pulling the statute of repose for 13 years or the excuse for not opening up the walls when the unit owners are complaining about water infiltration. Counsel, when was it that it first became widespread? I don't know if it ever became widespread. As the plaintiff argues in her brief, these were just minor leaks at a few garden units. What she's describing as widespread is, well, there appear to be widespread instances of poor construction technique, misinstalled lintels or coping. But in terms of water infiltration inside the units, I have not seen anything in the first, the original complaint or the first medical complaint, that suggests that this is a problem that extends beyond the four garden units. Again, they could have alleged that, but they didn't. They just simply said, because of that, we were incented to hire a contractor who opened up the walls and did a thorough audit of the construction practices, and these are all the problems that we saw. It's not that these problems have manifested into injuries, especially water infiltration. So I don't know if it's become a widespread problem yet. I don't think the court knows. Did the report that followed the 2007 or 2008 leakage, did that report then indicate in the report that it was widespread? No. That was only a study of two or four garden units. I forget. The Wharton report is April 9, 2009, and it's dated May 18, 2009. But they only talked to those four garden unit owners, and they performed some water testing. They do reference, in general, owners have been complaining, but I think that might be referencing just the four owners. To address Justice Tice's question or a number of your questions about whether or not the Section 13214 should apply in the first place, these are construction-related claims despite their labels. And, again, this court knows you have to look beyond the labels. You have to look at the kind of relief requested. In Count 4, the false statements provision refers, in our belief, it refers to the mandatory statements that are required to be contained in the property report by a condominium builder under the Chicago Condominium Ordinance. So there are 17 or so enumerated statements and descriptions that are required, and then Section 30 is the enforcement mechanism that says if you make a false statement or you omit one of those statements, that could subject you to some fines or other liability. The reason why this is construction-related. Can you comment in any way on the case from this Court of Gillespie? Oh, yes. If this Court were to find that a statute of limitations exception applies, this Court would still under Gillespie be required to revert back and analyze the claims under the five-year statute of limitations set forth in Section 205. The plaintiff's argument is that the appellate court did not have this opinion. Does Gillespie assist us in determining whether or not these are construction-related claims? In Gillespie, this Court held that – I'm not sure if this Court actually reached the issue of whether these were under Section 214 because it held that Section 214E applied, but then it reverted back. I think Gillespie involved the mine subsidence underneath the school, and so that would have been a construction-related claim because it was an architecture or engineering firm that was giving the report. I'm not sure how that would necessarily – I mean, it's an example of the kind of claim that usually falls under 214. But 214, by its text, applies to planning. Planning is design, management, supervision, observation, and planning. And when you're talking about a developer who is required to put together a property report disclosing a number of statements, including estimated operating budgets and estimated reserves over the lifespan of that project, you're talking about a developer that then has to set – is required to appoint people to sit on the first in-firm board, and usually they appoint themselves, and then set a budget for the new unit owners that first year at least. Those are planning activities that are required by law and that are associated with the building of condominium units. And then also if you look at the relief requested, they're not just simply saying, well, there was a misrepresentation and pay me for the misrepresentation. They're saying, as a result of that, you owe us for all the damages for construction – the reconstruction, the repair damages, the construction defects. Like I began my argument with, this is just a stale construction defect claim. They're trying to repackage it in a number of creative ways. But at the end of the day, what they're asking for is damages in the amount of the repair costs, which it doesn't follow from the fact that there might have been a misrepresentation or a budget set at a particular level. Does 205 apply to the ordinance? If 214 does not apply, yes, 205 would then apply under Gillespie. If 214 doesn't apply because there's an exception, then you still have to revert back to 205, which applies to all actions not otherwise provided for. And in this case, they have not pled that the five – they've met the five-year statute of limitations. Again, in order to invoke the discovery rule, the case law is clear. You have to plead facts that are sufficient to invoke the discovery rule. It's not enough to say, well, it's a question of fact, it happened sometime over an 11- or 12-year period. That is insufficient to invoke the discovery rule. It would make the discovery rule completely meaningless because plaintiffs could evasively or artfully plead around it. The argument that the plaintiff raised that this fiduciary has no duty to investigate before water leaks occur is beside – she's being creative about the argument. It doesn't – regardless of whether the unit owners or the association had a duty to investigate whether there were construction leaks before water leaks occurred, they certainly had a duty after water leaks occurred. At that point, there could be no concealment. That is, there is something wrong. And then it raises the question, when did that happen, and what stopped them from hiring a contractor to open up those walls? The Section 30 – their argument that Section 30 is limited to condominium developers, it doesn't follow – that's not – the condominium ordinance is not an anti-developer ordinance. It is a pro-consumer ordinance. And by its terms, it applies to – it says no person shall. Person is defined not as just developers, but anybody involved in the process of selling condominium units. Even a prospective purchaser, which is defined as somebody who visits a project site or somebody who requests a copy of the property report, could encompass a prospective purchaser of a previously owned unit, not a developer unit. So because under the Condo Property Act, all condominium unit owners were required to disclose under Section 22.1 a copy of the property report. I see my time is up, Your Honor. I'm sorry. Thank you. Our request is that the appellate court decision be reversed and the trial court opinion be reinstated and the complaint dismissed with prejudice. Thank you. Thank you. Case number 118139, the Henderson Square Condominium Association, et cetera, et al., versus LAB Townhomes, LLC, will be taken under advisement as agenda number 17. Mr. Soto and Ms. Perry, we thank you for your arguments today. You're excused. Mr. Marshall, the court stands adjourned until 9.30 a.m. tomorrow morning. Thank you.